[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Here the Golden Hill Paugussett Tribe of Indians (Golden Hill) sues the Town of Southbury (Town) and some 1200 property owners in Southbury to obtain possession of land in that town. Before the court are the town's motions for a temporary injunction against service of a notice of lis pendens upon those 1200 owners and to discharge the lis pendens.[1]
CT Page 9032
I.
Motion for Temporary Injunction
The court heard evidence and by the allegations of the complaint finds the land here involved consists of about one quarter of Southbury presently in the name of some 1200 persons. The filing of the lis pendens has affected adversely the ability of the record title owners to sell their land or obtain, mortgages since title companies have refused to underwrite the title. To some of those owners forced to move to other areas, this presents a real and immediate loss. To others, the Court would find the lis pendens caused annoyance and upset. It was designed to effect this as a means of putting pressure on these owners to support the Golden Hill Indians' application for Federal recognition, perceived as a necessary step in the Golden Hill's quest of a gambling casino in Bridgeport.
Golden Hill, or some of them, are planning to open, a gambling facility in Connecticut. In the media, Golden Hill has stated one of the reasons for filing land claim lawsuits is to get people's attention, thereby to seek a settlement with public officials and gain their support of Golden Hill's objective of Federal recognition. Chief Quiet Hawk, of Golden Hill, has publicly stated if these requests are not so resolved, Golden Hill will file claims in 24 towns with 640,000 defendants. Bernard Wishnia, Golden Hill's spokesman, has publicly stated for media distribution that if small land claims do not get people's attention, "we'll file lawsuits the likes of which Connecticut has never seen." Wishnia, an attorney, also publicly observed that if the land claims cases and the case drags on for three or four years and Golden Hill wins, Golden Hill would test moving people off the land.
Golden Hill has publicly stated it is aware of financial devastation its land claims may create and seeks a settlement. However, it has also stated if there is no settlement and "it does not get cooperation from elected officials, you [the title owners] may have to pay a substantial amount of money to the tribe."
On July 21, 1993, the United States District Court for the District of Connecticut dismissed an action filed in November 1992 by Golden Hill to settle title in it of certain land in Bridgeport.
Between July 23, 1993 and August 20, 1993, Golden Hill filed CT Page 9033 Indian land claims law suits in the Superior Court, against record title owners in the towns of Shelton, Trumbull, Seymour, Bridgeport and Southbury.
This suit was issued on July 23, 1993, filed in court on September 3, 1993, and the lis pendens recorded on September 3, 1993.
Since Golden Hill argues it has a legal right to file and perfect a lis pendens, the court must find that extraordinary circumstances, clearly proven by the town on behalf of its residents, requires an injunction against perfecting the notice by this widespread service of process.
The court is constrained to find the filing of the lis pendens and attempting service upon the property owners in Southbury is but a means of exerting pressure. The lis pendens is not required to advance Golden Hill's land claims. It must be seen as a naked effort to increase the scale of pressure upon politicians by upsetting and injuring their constituents needlessly. Although Golden Hill argues the lis pendens is required to protect its rights, the very nature of Indian land claims, where hundreds of years and thousands of good faith purchases are claimed to be of no effect, reveals that the lis pendens is unnecessary.
The land will be in Southbury whether the lis pendens is perfected or not, and Golden Hill will not be prejudiced in any way in its absence.
The court should protect others against needless and unduly burdensome procedures where a party publicly announces its motive is to vex or agitate those parties. See Safir v. U.S. Lines, 2 Cir. 792 F.2d 19, 23 (1986). The courts should not be used as vehicles for such use, especially where, if there is jurisdiction, the courts are open and ready to hear Golden Hill's claims.
See Helene Curtis Industries v. Sales Affiliates, (DCNY 1)105 F. Sup. 886, 902.
Accordingly, the temporary restraining order against continued service of the notice of lis pendens is granted.
II.
Since the hearing on the temporary restraining order dealt with probable cause to bring this suit, the court also heard evidence CT Page 9034 concerning the town's motion to dissolve the lis pendens. The issue to be decided on that motion is whether the evidence establishes there is probable cause to sustain the validity of the claim. Down Condon Inc. v. Anderson, 302 Conn. 475. The legal idea of probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances in entertaining it. It, in essence, is a common sense standard. Corsino v. Telesca, 32 Conn. App. 627, 631-2.
Golden Hill claims title to Southbury properties because Indian transfers made in Colonial times and under Colonial laws were invalid and void under those laws. Putting aside the effect of these laws on fee title after the Revolution of 1776, see Johnson v. Macintosh, 21 U.S. (Wheaten) 543, 5 L.Ed. U.S. 18-21, page 541, the court has determined that probable cause does not exist that the Colonial laws rendered the Indian deeds invalid.
Golden Hill claims that 1733 to 1759 deeds of Indians to the English settlers of Woodbury (later Southbury as to the subject lands) violated two Colonial Statutes, those of 1663 and 1717. The Act of 1663 provided:
 This Court orders, that no person in this Colony shall buy, hire or receive as a gift or mortgage, any parcel of land or lands of any Indian or Indians, for the future, except he doe buy or receive the same for the use of the Colony or the benefit of some Towne, with the allowance of the Court.
1 Pub. Rec. Col. Conn. 402 (1663).
The Act of 1717 provided:
1717 LAW:
 This Assembly, observing many difficulties and perplexities arising in this government by reason of mary purchase of land made of Indian titles without the preceding allowance or subsequent approbation of this Assembly: which to remove,
 It is hereby enacted and declared by this Assembly and the authority thereof, That all lands in this government are holden of the King of Great Britain as the lord of the fee; and that no title to any lands in this Colony can accrue by any purchase made of Indians on pretence of their being native proprietors CT Page 9035 thereof, without the allowance or approbation of this Assembly.
 So it is hereby resolved, That no conveyance of native right or Indian title, without the allowance or approbation of this Assembly as foresaid, shall be given in evidence of any man's title, or pleadable in any court.
6 Pub. Rec. Col. Conn. 13 (1717).
The gist of the Golden Hill claim in its complaint is that before the institution of the State of Connecticut, the Colony of Connecticut under British rule repeatedly passed legislation prohibiting the Colonists from buying or receiving Indian land without the approval of the General Court or Assembly, the ruling body of the Colony. Since the Pootatuck Indians, claimed to be of the Paugussett Tribe, reserved a piece of land in the Southwestern most corner of the present Southbury in 1706 when a committee of proprietors of the Town of Woodbury received a deed from Indians at Pootatuck, Golden Hill claims to have title to those lands as Paugussett Indians.[2]
The lynchpin of the Golden Hill Indians' claim is that the Colonial enactments of 1663 and 1717 invalidate subsequent deeds of that land from Pootatuck Indians between 1733 and 1759 to a committee of all Woodbury proprietors or of Woodbury. However, the evidence presented and the colonial records introduced make clear that the only reasonable construction of the 1733 to 1759 deeds are that these deeds were for the benefit of the Town of Woodbury.
The Colonial and Woodbury town records also establish without contradiction that settlers from Stratford in 1667 were granted by the General Court a liberty to purchase "Potatuke" and the lands adjoining for a village or plantation. 1 Colonial Records 75. Thereafter, in 1672 the General Court granted some of those settlors "liberty to errect a plantation at Pomperoage." 1 Colonial Records, 177. In 1674 the General Court granted that "Paumperaug" and the plantation, there shall be called by the name Woodbury. 1 Colonial Records, 227.
In 1686, the General Court granted a patent to inhabitants of Woodbury within prescribed bounds, confirming past Indian deeds and "by these presents doe give, grant, ratify, and confirm unto" named proprietors and their heirs and assignees and other inhabitants "all that aforewayd Tract or parcells of lands." The CT Page 9036 bounds of the patent were describes as:
 viz. on Mattatuck Bownds the Comons in part on the East, on the Comons on the North, upon potatuck River the Middle of the Streame the Comons on the West, upon Derby Bownds on the Sowth, is about Eight Miles in length Seven miles in breadth East west;
In 1702, the Colonial Assembly addressed whether any person may purchase Indian land within a township declaring: "it onley in the power of such townships to whome the grant is made, to purchase chase those lands of the Indians; and all other purchases to be illegal." 4 Pub. Rec. Col. Conn. 397 (1702).
Golden Hill presented no evidence that the subject property was not within the 1686 patent. The bounds of the patent and the recording of the 1706 deed and the questioned deeds in Woodbury admit of no other reasonable conclusion than that the subject property was within the Woodbury patent bounds. The western. bounds of Woodbury as laid out in 1714 and accepted in 1715 include the subject property. See The History of Ancient Woodbury, Cothren, pp. 53-54 and map opposite p. 21. Such patents have been held not only to be a confirming authority but a grant of present authority to establish the town within these boundaries. East Haven v. Hemingway (1828) 7 Conn. 186, 198.
The Colonial Records establish that the grantees of the subject deeds did have the required allowance or "preceding allowance" of the General Court or Assembly and Golden Hill presented no evidence to the contrary.
The Colonial laws did not prohibit committees of the town or those acting on behalf of a granted or patented town or inhabitants of a town from acquiring Indian land. Forming a town in a wilderness populated by Indians would necessarily require that its settlers have that authority. The original founders of Pootatuck, later named as proprietors of Pomperaug were explicitly given power to purchase the land. Colonial law prohibited only the private purchase of land. See American Indian and The Law of Real Property in Colonial New England, Springer, The American Journal of Legal History, Vol. XXX, p. 36.
Golden Hill also argues that a General Court order of 1680 invalidates the 1733 to 1759 deeds. That order is contained within a series of Indian requests, answered in one case by a grant to CT Page 9037 the Milford and "Paugesuck" indians of 100 acres upon Corum Hill "layd out to them" by Fowler and Burr and a hundred acres on the other side of the river within Milford which "Hawly is to lay out." Thereafter the following appears:
 This Court orders that what land is allotted or set apart for any parcells of Indians within the bownds of any plantation, it shall be recorded them and the same shall remain to them and their heirs for ever; and it shall not be in the power of any such Indian or Indians to make any alienation, thereof; and whatsoever Englishmen shall purchase any such lands layd out or allotted to the sayd Indians, he shall forfeit treble the value of what he so purchases to the publique treasury, and the bargain shall be voyd and null.
The record then refers to the Paquanock Indians who have sold their lands, and finds that there is a sufficient quantity of land at Golden Hill reserved for planting but "if they need more, upon discovery thereof, it will considered." Golden Hill argues that the deed of 1706 where the Pootatucks reserved lands "to ourselves" created a reservation which could not be alienated under 1680 order. Both the language of the order affecting "what land is allotted or set apart for any parcells of Indians" and the context of the order illustrate the order only applies to lands set apart and sequestered for Indians by the order of the General Court and not those which the Indians may reserve for themselves.
Golden Hill has presented no evidence that the General Court or Assembly ever ordered or granted the Indians at Pootatuck the subject lands.
Furthermore, the order is directed against a private sale to "whatsoever Englishman" and direct "he" shall forfeit funds to the treasury. The court would find this order would have no application to the 1706 deed to Woodbury.
Enactments of the General Court found in the Acts and Laws of His Majesties Colony of Connecticut in New England (1702), in force at the time of the 1733 to 1759 deeds, make clear that only sales of Indian lands to private individuals without the allowance of the General Court were prohibited. The act provided:
 . . . . That no person or persons in this colony, whether Inhabitants or other, shall buy, hire or receive a gift, or Mortgage any parcel of Land or Lands, of any Indian or Indians for the CT Page 9038 future, except he or they do buy or receive the same for the use of the colony, or for some Plantation or Village, or with the allowance of the General Court of this Colony.
 And if any person or persons shall purchase or receive Land of any Indian or Indians, contrary to the intent of this Act, the person or persons so offending, shall forfeit to the public Treasury of this Colony, the treble value of the Land so purchased or received: And no Interest or Estate in any Lands in this Colony, shall accrue to any such person or persons, by source or virtue of such illegal bargain, purchase or receipt.
Id., p. 57. This act remained unchanged at least until after the last disputed transfer in this case. See Acts and Laws of His Majesties Colony of Connecticut in New-England, p. 58 (1715); Acts and Laws of His Majesties English Colony of Connecticut in New-England in America, p. 98 (1769).
Accordingly, the court finds no probable cause exists to validate the claims subject of the lis pendens and orders the lis pendens discharged.
McDonald, J.